UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GEOFFREY S. RUBIN,
as Trustee of the Southern Tier News
Company Pension Plan,

                                    Plaintiff,

                                                              DECISION AND ORDER

                                                              03-CV-6201L

                    v.

VALICENTI ADVISORY SERVICES, INC.,
et al.,

                                    Defendants.
_____


          This action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1101 *et seq.*, is before the Court on the objections by defendants/third-party plaintiffs Valicenti

Advisory Services, Inc. ("VAS") and its president, Vincent R. Valicenti (collectively "defendants")

to the June 16, 2006 Decision and Order of United States Magistrate Judge Marian W. Payson, 236

F.R.D. 149, which granted the motion by plaintiff/third-party defendant Geoffrey S. Rubin for leave

to amend his answer to defendants' third-party complaint.[1]  For the reasons that follow, the Court

rejects defendants' objections and affirms and adopts the Magistrate Judge's Decision and Order in

its entirety.

_____

          [1]By prior Order of this Court, all pretrial matters in this case have been referred to
Magistrate Judge Payson pursuant to 28 U.S.C. § 636.  Dkt. #3.

## FACTUAL BACKGROUND

Rubin brought this action in April 2003 in his capacity as trustee of the Southern Tier News Company Pension Plan ("Plan"), seeking to recover losses suffered by the Plan, allegedly as a result of imprudent investment decisions by VAS, which served as the investment manager of the Plan from February 2000 to October 2002.  On July 19, 2004, I issued a Decision and Order, 326 F.Supp.2d 427, granting defendants' motion for leave to amend the answer to assert third-party claims against Rubin individually, seeking contribution and indemnity based on defendants' allegation that the Plan's losses were caused by Rubin's own breach of his fiduciary duties.

Rubin answered the third-party complaint on September 10, 2004. (Dkt. #35).  On February 17, 2006, Rubin moved before Magistrate Judge Payson for leave to amend his answer to assert counterclaims relating to defendants' alleged mismanagement of his *personal* account, which he opened with defendants at about the same time as the Plan account.

In her Decision and Order granting Rubin's motion, Magistrate Judge Payson first found that Rubin's proposed counterclaims concerning defendants' management of his personal account arise out of the same transactions or occurrences on which defendants' third-party claims for indemnity and contribution are based, and, accordingly, that they are compulsory counterclaims.  236 F.R.D. at 156.  Magistrate Judge Payson also found that the counterclaims relate back to the filing of the third-party complaint on July 28, 2004, and that they are therefore not barred by the relevant statutes of limitations of three years for Rubin's claims for professional malpractice and breach of contract,

*see* N.Y. C.P.L.R. § 214(6), and six years on his fraud claim, *see* N.Y. C.P.L.R. § 213(8).[2]

Magistrate Judge Payson concluded that Rubin's proposed counterclaims were timely, and that his

motion to amend his answer to include those counterclaims was therefore not futile.  236 F.R.D. at

157.

In their objections, defendants contend that Magistrate Judge Payson erred in a number of

respects.  They first assert that she erred in concluding that Rubin's counterclaims relate back simply

because they are compulsory.  Defendants contend that Magistrate Judge Payson should have also

made a finding concerning whether Rubin's original answer put defendants on notice of the subject

matter of his counterclaims.  Defendants further assert that, in any event, Rubin's counterclaims are

*not* compulsory, and that they do not meet the test for relation back of amendments under Fed. R.

Civ. P. 15(c)(2).

## DISCUSSION

### I. Standard of Review

This action was referred to Magistrate Judge Payson pursuant to 28 U.S.C. § 636, which

generally provides, in part, that a judge may designate a magistrate judge to hear and determine any

nondispositive pretrial matter, and to issue proposed findings of fact and recommendations

---

[2]Defendants have argued, both before Magistrate Judge Payson and before me, that the Court should not apply the six-year statute of limitations applicable to fraud claims because Rubin has simply "tacked on" a fraud claim in an attempt to avoid the three-year statute of limitations applicable to his malpractice and contract claims.  Because I find that even the claims governed by a three-year limitations period are timely, there is no need for the Court to decide this issue at this time.

(commonly referred to as a "report and recommendation") for the disposition of dispositive matters. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72.  A party may object to a magistrate judge's decision on either type of matter within ten days after being served with the order.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

"The primary distinction between objections made pursuant [to] Rule 72(a) [governing nondispositive matters] and Rule 72(b) [governing dispositive motions] lies in the standard of review applied by the district court.  Under Rule 72(a), a magistrate judge's decision can be vacated only if it is 'clearly erroneous or contrary to law,' whereas Rule 72(b) applies a *de novo* review standard to objections to a magistrate judge's report and recommendation." *In re Comverse Tech., Inc. Derivative Litigation*, No. 06-CV-1849, 2006 WL 3511375, at *2 n. 1 (E.D.N.Y. Dec. 5, 2006). Under the "clearly erroneous" standard of review of Rule 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently.  Rather, the district court must affirm the decision of the magistrate judge unless "the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *accord Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985); *In re Health Management, Inc.*, No. CV 96-0889, 1999 WL 33594132, at *4 (E.D.N.Y. Sept. 25, 1999).  Under *de novo* review, the magistrate judge's findings and rulings are entitled to no deference.  *See Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) ("*De novo* review is review without deference").

The standard of review that this Court employs in considering objections to a magistrate judge's decision, then, depends on whether the underlying motion is considered dispositive or nondispositive.  Although the Court of Appeals for the Second Circuit has not ruled on whether a

motion to amend a pleading is properly classified as dispositive or nondispositive, "the weight of authority within this Circuit classifies a motion to amend a [pleading] as a non-dispositive pre-trial motion, and holds that a magistrate's order should be reviewed under the 'clearly erroneous standard.'" *Palmer v. Monroe County Sheriff*, 378 F.Supp.2d 284, 289 (W.D.N.Y. 2005) (collecting cases). *See also Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993) ("Under ordinary circumstances a motion to amend a complaint is 'a pretrial matter not dispositive of a claim or defense of a party' within the purview of Fed. R. Civ. P. 72(a)"); *Micale ex rel. Charles A. Micale Irrevocable Insurance Trusts v. Bank One N.A. (Chicago)*, No. 04-cv-00288, 2006 WL 1222330, at *2 (D.Colo. May 5, 2006) ("As a general matter, courts view a magistrate judge's decision to grant leave to amend a complaint as non-dispositive"); *Stetz v. Reeher Enters., Inc.*, 70 F.Supp.2d 119, 120 (N.D.N.Y. 1999) ("Orders granting leave to amend are nondispositive, as they do not remove claims or defenses of a party") (quotation omitted).   Accordingly, I review Magistrate Judge Payson's decision granting Rubin's motion for leave to amend his answer to the third-party complaint under the clearly-erroneous standard.

To the extent that Magistrate Judge Payson's decision is based upon her finding that the proposed counterclaims relate back under Rule 15(c)(2), however, the Second Circuit has recently clarified that review of that finding is *de novo*. *See Salyton v. American Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) ("The proper standard of review of Rule 15(c)(2) decisions is ... *de novo* ..."). As the court explained in *Salyton*, "[a] court reviewing a Rule 15(c)(2) decision performs a function analogous to that performed by an appellate court reviewing a dismissal for failure to state a claim under Rule 12(b)(6)," since the relevant question in either situation focuses on facts provable under the allegations of the complaint, an inquiry which "appellate courts seem to be 'in as good a position

as the [lower] court'" to make.  *Id.* at 227 (quoting *Percy v. San Francisco Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988)).

**II. The Magistrate Judge's Decision**

Magistrate Judge Payson first found that Rubin's proposed counterclaims were compulsory under Rule 13(a), which provides that, with two exceptions not relevant here, a party must raise–or else forfeit–"any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  236 F.R.D. at 156.  Magistrate Judge Payson went on to conclude that the requirements of Rule 13(f) had been satisfied.[3]

She then considered whether the counterclaims were timely under Rule 15(c)(2), which provides that an amended pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ... ."  Magistrate Judge Payson stated that in this case, "the question of timeliness [under Rule 15(c)] effectively conflates with the determination whether the proposed claims are compulsory under Rule 13(a)," because "[b]oth rules look to whether the new claims arise out of the same transaction as that in the original pleading." 236 F.R.D. at 156 (footnote omitted).

---

[3]**(f) Omitted Counterclaim.** When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

Relying upon the Second Circuit's statement in *Banco Para El Comercio Exterior De Cuba v. First Nat'l City Bank*, 744 F.2d 237 (2d Cir. 1984), that "[o]nce the standard set forth in Rule 13(f) is satisfied and leave of court to set up the omitted counterclaim by amendment has been granted, the remaining provisions of Rule 15(c) should be fully applicable and the amendments should relate back if it meets the test provided by Rule 15(c)," *id.* at 243 (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1430 at 159-60 (1971)), Magistrate Judge Payson held that the counterclaims did relate back, and that they were therefore not barred by the applicable statutes of limitations. 236 F.R.D. at 157.

## III. Defendants' Objections

In their objections to Magistrate Judge Payson's Decision and Order, defendants first argue that she erred in concluding that Rubin's counterclaims relate back simply because they are compulsory. Defendants contend that, regardless of whether the counterclaims are compulsory, they do not relate back unless they meet the test for relation back under Rule 15(c)(2).

Although the language of Rule 15(c)(2) is similar to that of Rule 13(a), Rule 15(c)(2) has been interpreted to require that the original pleading must have given notice to the opposing party of the matters raised in the amended pleading. *See United States v. The Baylor University Medical Center*, 469 F.3d 263, 270 (2d Cir. 2006) ("the touchstone for relation back pursuant to Rule 15(c)(2) is notice"); *accord Salyton v. American Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006). Defendants argue that even if Rubin's proposed counterclaims are compulsory–which they dispute–they do not meet that test, that they are therefore time-barred, and that Rubin's motion should be denied as futile.

In support of these arguments, defendants contend that the magistrate judge misinterpreted the Second Circuit's decision in *Banco Para el Comercio*.  There, the Court of Appeals cited with approval the rule (which had previously been expressed by several district courts in this circuit) that "a counterclaim amended pursuant to Rule 13(f) may relate back to the date of the original answer when the counterclaim arises out of the same transaction that was pleaded in the answer and there is no prejudice to the opposing party's ability to defend the merits of the counterclaim." *Banco Para el Comercio*, 744 F.2d at 243.

Focusing on the word "may" in that sentence, defendants contend that the Second Circuit implicitly held that relation back of counterclaims added by amendment is not automatic. Defendants also note the court's statement that "[o]nce the standard set forth in Rule 13(f) is satisfied and leave of court to set up the omitted counterclaim by amendment has been granted, the remaining provisions of Rule 15(c) should be fully applicable and the amendments should relate back *if it meets the test provided by Rule 15(c)*," *id.* (emphasis added).  Defendants assert that Magistrate Judge Payson essentially ignored this clause, which they interpret to mean that for the counterclaim to relate back, the original answer must have provided notice of the subject matter of the counterclaim.

At the outset, I note that the court in *Banco Para el Comercio* was dealing with the subject of counterclaims added by amendment pursuant to Rule 13(f), without regard to whether the counterclaims are compulsory under Rule 13(a).  *Banco Para el Comercio* does not even mention Rule 13(a) or compulsory counterclaims.  The court simply held that Rules 13(f) and 15 should be construed together "so that Rule 13(f) supplements the general provisions of Rule 15 by setting forth a particular standard for allowing the late assertion of omitted counterclaims." *Id.* (quoting 6 Wright

& Miller, *supra*, § 1430, at 159-60).  The court had no occasion to consider whether the "transaction

or occurrence" standard of Rule 13(a) is equivalent to the "conduct, transaction or occurrence"

provision of Rule 15(c)(2).[4]

      I find it unnecessary to decide whether the standards under the two rules are the same,

however, or for that matter whether Rubin's counterclaims are compulsory.   Assuming

---

     [4]There appears to be little case law directly addressing this question, and what little case law does exist is not particularly instructive.  *See In re Olympia Brewing Co. Sec. Lit.*, No. 77 C 1206, 1985 WL 8803, at *6 (N.D.Ill. Jan. 14, 1985) (stating that "the tests in 13(a) and 15(c) are not necessarily the same," but not explaining how they might differ).

     One possible reason for that is that courts generally hold that the filing of an action tolls the limitations period for compulsory counterclaims.  *See, e.g., Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 388 (4th Cir. 2000); *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1980); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 CIV. 3231, 2003 WL 22358805, at *1 (S.D.N.Y. Oct. 15, 2003); *Aramony v. United Way of America*, 969 F.Supp. 226, 231 (S.D.N.Y. 1997); *Andre v. Schenectady Cty.*, 95 Civ. 573, 1997 WL 135910, at *2 (N.D.N.Y. Mar. 13, 1997).  Thus, "[t]he timeliness of compulsory counterclaims is measured from the date the complaint was filed in the case ... ."  *Meadowbrook-Richman, Inc. v. Associated Financial Corp.*, 325 F.Supp.2d 341, 363 (S.D.N.Y. 2004).  If a counterclaim is compulsory, then, there is ordinarily no need to consider whether it relates back to the filing of the answer under Rule 15(c)(2), since the statute of limitations will have been tolled from the time that the complaint was filed.

     This rule, however, has generally been applied only to counterclaims asserted only for recoupment or as setoffs, and not to counterclaims seeking affirmative relief.  *See In re America West Airlines, Inc.*, 217 F.3d 1161, 1167 (9th Cir. 2000) ("statutory limitations periods generally have no application to offsetting counterclaims and other matters of defense, as opposed to actions seeking affirmative relief") (quoting *In re KF Dairies, Inc.*, 143 B.R. 734, 736 (9th Cir. BAP 1992)); *Hurst v. United States Dep't of Educ.*, 901 F.2d 836, 837 (10th Cir. 1990) ("It is fairly well established ... that a counterclaim for affirmative relief ... is subject to the operation of pertinent statutes of limitation"); *Wells v. Rockefeller*, 728 F.2d 209, 215 (1st Cir. 1984); *James v. Antilles Gas Corp.*, No. Civ. 193/1998, 2000 WL 1349233, at *5 (D.V.I. July 19, 2000); *United States v. Mansour*, No. 396CV01884, 1997 WL 718456, at *2 (D.Conn. Aug. 27, 1997); *see also Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella*, 350 F.3d 73, 93 n. 1 (2d Cir. 2003) ("Counterclaims for affirmative relief are generally subject to applicable statutes of limitation") (citing *Hurst*, 901 F.2d at 837) (Straub, J., dissenting), *cert. denied*, 541 U.S. 1086 (2004).  Since Rubin's counterclaims allege that defendants' actions have injured Rubin personally, and assert claims for damages for those injuries, *see* Dkt. #77 at 63, then, the tolling rule does not apply here.

*arguendo* that the standards are not the same, or that the counterclaims are merely permissive, the notice requirement of Rule 15(c)(2) has been met here, and the counterclaims relate back to the filing of the answer.

Discussing the notice requirement, the Second Circuit has stated that "the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999). *See also Baylor Univ. Med. Ctr.*, 469 F.3d at 270 (relation back depends on "whether the original pleading gave a party 'adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense'") (quoting 6A Wright & Miller, *supra*, § 1497).

With respect to counterclaims, the general rule is that "[s]o long as counter-defendant had adequate notice of the transactions forming the basis for the amended claim, relation back is appropriate." *Nordco, A.S. v. Ledes*, No. 95 CIV. 7753, 1999 WL 1243883, at *7 (S.D.N.Y. Dec. 21, 1999). *See also Cornerstone Systems, Inc. v. Knichel Logistics, L.P.*, No. 2:03cv584, 2006 WL 2471531, at *14 (W.D.Pa. Aug. 24, 2006) (stating that application of Rule 15(c) to proposed counterclaim "involves a search for a common core of operative facts in the two pleadings" and that "the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds") (quoting *USX Corp. v. Barnhart*, 395 F.3d 161, 167 (3d Cir. 2004)).

That standard has been met here.  First, the third-party complaint itself indicates a connection between the management of the Plan's assets and Rubin's personal account:  "With respect to many of the trades and investments which Rubin (as trustee) is now criticizing, Rubin made similar trades

and/or held the identical stocks in his personal accounts." Dkt. #34 ¶ 79.  Defendants also allege that "Rubin was an experienced, sophisticated investor who was an 'active' trader and whose personal investment objectives included 'hedging' and 'speculation,'" and that "Rubin's actions regarding the Plan were done to further his personal interests ... ."  *Id.* ¶¶ 73, 82.

Admittedly, Rubin's answer to the third-party complaint does not reference his personal account, other than denying the allegations quoted above.   Answers that do not contain counterclaims rarely set forth many factual allegations themselves, however, so in considering whether the notice requirement has been met in the context of an amendment which would add counterclaims to an *answer*, it would make little sense to mechanically apply the principle governing amended *complaints*, *i.e.*, that "[t]he pertinent inquiry ... is whether the original complaint gave the defendant fair notice of the newly alleged claims."  *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998), *overruled on other grounds, Salyton*, 460 F.3d 215.   An answer without counterclaims typically does not provide much "notice" of anything, other than the defendant's general denial of the plaintiff's allegations.

Bearing this in mind, then, along with Rule 15(c)'s rationale, which is "that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide," *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 159 n. 3 (1984), and its purpose, which is "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities,'" *Salyton*, 460 F.3d at 228 (quoting *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983)), the Court will not narrowly focus on whether the original third-party answer put defendants on notice of Rubin's subsequent counterclaims, but on the broader, more fundamental question of whether defendants were aware

that the matters giving rise to the counterclaims would be at issue in this litigation.  *See* 6A Wright & Miller, *supra*, § 1497 at 93 (observing that "it seems unwise to place undue emphasis on the particular way in which notice is received," and that the better approach "is to determine whether the adverse party, viewed as a reasonably prudent person, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question"); *see also Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 251 n. 8 (6th Cir. 2000) (stating that court was "inclined to believe that notice may be provided by sources outside the pleadings," but finding it unnecessary to decide issue on facts before it); *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F.Supp.2d 423, 440 (W.D.N.Y. 2005) (rejecting the "premise that as a matter of law the requisite notice required under Rule 15 must be found in the content of the original pleading").

As stated, the third-party complaint itself suggests a connection between the management of the Plan's assets and that of Rubin's personal account.  The thrust of defendants' allegations is that notwithstanding the agreement between Rubin and defendants making VAS the investment manager for both accounts, Rubin prevented VAS from freely exercising that role, and that Rubin was the real decisionmaker with regard to investment strategies and objectives.  *See* Dkt. #34 ¶¶ 75-82.  Defendants have also suggested that Rubin's investment practices were similar, if not identical, with respect to both accounts, and that he controlled them both with an eye toward advancing his own personal interests.  It can hardly come as a surprise to defendants, then, that Rubin now seeks to assert that they mismanaged his personal account in the same manner in which he alleges that they mismanaged the Plan's assets.  *See Rosenzweig v. Suburban Orthopedics Associates, Ltd.*, No.

86-2522, 1988 WL 65905, at *7-8 (E.D.Pa. June 21, 1988) (observing that "the defendant's counterclaim arises out of the same transaction that is the subject matter of the plaintiff's claim," and holding that counterclaim related back "since the plaintiff has had adequate notice of the transaction forming the basis of the proposed counterclaim").

I also conclude that Magistrate Judge Payson did not err in finding that "the requirements of Rule 13(f) have been satisfied and that the interests of justice require that leave be permitted to assert the compulsory counterclaims by amendment," and that "defendants have not been prejudiced by the tardy assertion of these counterclaims." 236 F.R.D. at 156 n. 4. In that regard, the Court's finding that the notice requirement of Rule 15(c) has been satisfied largely disposes of the issue of prejudice as well, since "'[n]otice,' as that term is employed in [Rule 15(c)], serves as the means for evaluating prejudice." *Woods v. Indiana Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880, 888 (7th Cir. 1993); *see also Banco Para el Comercio*, 744 F.2d at 243 (amended counterclaim may relate back to the date of the original answer when it "arises out of the same transaction that was pleaded in the answer and there is no prejudice to the opposing party's ability to defend the merits of the counterclaim"); *Perfect Plastics Industries, Inc. v. Cars & Concepts, Inc.*, 758 F.Supp. 1080, 1082 (W.D.Pa. 1991) (allowing defendants to amend answer to assert counterclaims, since "plaintiff has failed to assert how it will be prejudiced by the defendants' delay in filing the counterclaims," and ruling that counterclaims related back to filing of answer, since they arose from the same transaction alleged in the answer).

**CONCLUSION**

Defendants' objections (Dkt. #97) to the Decision and Order of Magistrate Judge Marian W. Payson entered on June 16, 2006 are hereby denied, and the Decision and Order is affirmed in all respects.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 26, 2007.

- 14 -